FILED
December 29, 2011
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0003984404

7

MARK L. POPE #182769
Assistant United States Trustee
GREGORY S. POWELL #182199
ROBIN TUBESING #26680-49 [Indiana]
United States Department of Justice
Office of the United States Trustee
2500 Tulare Street, Suite 1401
Fresno, California 93721
Telephone: (559) 487-5002
Telecopier: (559) 487-5030

Attorneys for August B. Landis,
Acting United States Trustee

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| In re:<br><br>TAMMY LYNN ALLISON,<br><br><br><br><br><br>Debtors. | Case No. 11-62109-B-7<br>Chapter 7<br>DC No. UST-1<br><br>Date: February 2, 2012<br>Time: 10:00 a.m.<br>Place: U.S. Bankruptcy Court<br>      Department B, Courtroom 12<br>      2500 Tulare Street<br>      Fresno, California<br>Judge: W. Richard Lee |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF UNITED STATES TRUSTEE'S MOTION TO DISMISS CASE
PURSUANT TO 11 U.S.C. §707(b)(1)**

TO THE HONORABLE W. RICHARD LEE,
UNITED STATES BANKRUPTCY JUDGE:

August B. Landis, United States Trustee, respectfully submits this memorandum of points and authorities in support of his motion to dismiss the above referenced case pursuant to 11 U.S.C. § 707(b)(1), and represents as follows:

I.  **Factual Background**

1. The Debtor filed a voluntary petition under chapter 7 on November 4, 2011.

2. The Voluntary Petition indicates that the Debtor is an individual with primarily

- 1 -

consumer debt.

3. In her schedules, the Debtor lists unsecured nonpriority claims against the estate totaling $41,344, priority claims totaling $0, and secured claims totaling $180,374.

4. The Debtor's Form 22A states that her Total Current Monthly Income ("CMI") is $6,909.24 and that her annualized CMI is $82,910.88. This amount exceeds the applicable median family income of $61,539[1], which required the Debtor to complete the entire Form 22A to calculate whether the presumption of abuse arises. According to the Debtor's Form 22A, the presumption of abuse does not arise.

5. Nearly every line-item on the Debtor's Form 22A is incorrect, as follows:

    a. Line 20A (Local Standards: housing and utilities: non-mortgage expenses). The Debtor claimed $470. The actual Local Standard is $478.

    b. Line 20B (Local Standards: housing and utilities; mortgage/rent expense). The Debtor claimed a Local Standard of $965. First, the appropriate standard is $1,314. Second, the Debtor failed to back out the mortgage payment as required by the instructions to Line 20B. The Debtor reported the mortgage expense as $2,578.50 on Line 42. However, on Schedule J, the expense is reported as $1,300. Therefore, the Debtor should have subtracted the mortgage payment of $1,300 from the Local Standard of $1,314. The Debtor should have claimed $14 on Line 20B.

    c. Line 21 (Local Standard: housing and utilities; adjustment). The Debtor claimed $335 and does not list what this expense is for. No explanation is given regarding why the Debtor should be permitted to claim this expense. This expense should be disallowed in its entirety.

    d. Line 23 (Local Standard: transportation ownership/lease expense). The Debtor claimed $496. The Debtor failed to back out the vehicle payment as required by the instructions to Line 23. The Debtor should have backed out the $427.73 average vehicle payment (the balance of the loan on Schedule D divided by 60 months) over the next from the Local Standard of $496. The Debtor may only claim $68.27 on Line 23.

    e. Line 26 (Involuntary deductions for employment). The Debtor claimed $509.16. It appears the Debtor included a loan repayment of $433.33 (See Schedule I). The Debtor may only claim $73.83 on Line 26.

---

[1] The Debtor erroneously listed the applicable median family income as $62,970.

|   |   |   |
|---|---|---|
| f. | | Line 27 (life insurance). The debtor claimed $73.83. This appears to be a mandatory retirement contribution, which is not life insurance. Further, it appears the Debtor already claimed this expense at Line 26. The Debtor should have claimed $0 on Line 27. |
| g. | | Line 29 (education for employment or for a physically or mentally challenged child). The Debtor claimed $350. However, on Schedule J, the Debtor classified this expense as "children education expenses." Therefore, it appears this expense should have been claimed at Line 38, which caps child education expenses at $147.92. Further, Line 38 requires documentation of the expense, which has not been provided. The Debtor should have claimed $0 on Line 29. |
| h. | | Line 31 (health care). The Debtor claimed $392.34. On Schedule J, the Debtor lists out-of-pocket medical expenses of $390. However, the Debtor failed to back out $120 she claimed on Line 19B, National Standard: health Care. The Debtor may only claim $270 (the amount claimed on J minus the National Standard). |
| i. | | Line 40 (charitable contributions). The Debtor claimed $300. However, on the Statement of Financial Affairs, paragraph 7, titled 'Gifts,' the Debtor is required to list all charitable contributions made within one year of the date of the petition. The Debtor listed "none." The Debtor is not entitled to this expense. |
| j. | | Line 42 (Future payments on secured property). The Debtor claimed a mortgage expense of $2,578. However, Schedule J lists this expense as $1,300. The Debtor's Statement of Intention indicates she intends to keep this property. The Debtor should only be permitted to claim the actual mortgage expense, which the Debtor reports as $1,300. |
| k. | | Line 49 (total deductions for expenses). The Debtor claimed $7,082.49 in total expenses. The United States Trustee is unable to determine how the Debtor arrived at this figure, as the expenses claimed by the Debtor do not equal $7,082.49. |

6. After correcting the above errors, the Debtor appears to have disposable income of $761.98 (which includes a deduction for projected Chapter 13 fees and anticipated additional attorney fees). She can pay $45,718.80 of her unsecured debt over 60 months. She has the ability to pay more than the $11,725 threshold. This establishes the presumption of abuse under Section 707(b)(2).

///

///

///

7. In addition, Schedules I and J include expenses that are not actual, reasonable, and/or necessary, as follows:

    a.    "Loan Payback" in the amount of $433.33 on Schedule I. This is not a reasonable and/or necessary expense.

    b.    Telephones in the amount of $120 and cable/internet in the amount of $120 on Schedule J. Paying $240 for telecommunications is not reasonable and/or necessary.

    c.    Charitable contributions in the amount of $300 on Schedule J. According to the Statement of Financial Affairs, the Debtor does not make charitable contributions. This expense is not actual.

    d.    Due to the numerous errors and inaccuracies in her Schedules, the Debtor should be required to produce documentation for the $250 she claimed for "alimony, maintenance, and support paid to others" and the $350 she claimed for "Children Education Expenses."

## II. Legal Standard

Section 707(b)(1) provides that the court may dismiss a case filed by an individual whose debts are primarily consumer debts if it finds that granting relief would be an abuse of the provisions of Chapter 7. 11 U.S.C. § 707(b)(1); see also In re Pak, 343 B.R. 239 (Bankr. N.D. Cal. 2006).

Although the Bankruptcy Code does not define the term "primarily" consumer debt, the Ninth Circuit has held that the standard is met when more than half of the dollar amount owed is consumer debt. Zolg v. Kelly (In re Kelly), 841 F.2d 908, 913 (9th Cir. 1988). The Debtor indicated on their Petition that the nature of the debts is consumer as defined in 11 U.S.C. § 101(8), and the debts appear to have been incurred by the Debtor for personal, family, or household purposes.

## III. Argument

### A. The Presumption Of Abuse Arises

The court shall presume abuse exists if:

... the debtor's current monthly income reduced by [certain numbers] and multiplied by 60 is not less than the lesser of -

    (I) 25 percent of the debtor's nonpriority unsecured claims in the case or

$6,575, whichever is greater; or

(II) $11,725.

11 U.S.C. § 707(b)(2)(A)(I). The Debtor's current monthly income is defined by 11 U.S.C. § 101(10A), and the Debtor's monthly expenses are the applicable monthly expense amounts specified under the National Standards and Local Standards issued by the Internal Revenue Service. 11 U.S.C. § 707(b)(2)(A)(ii). For the reasons discussed above, the presumption of abuse arises.

The presumption of abuse under 11 U.S.C. §707(b)(2) may only be rebutted by a debtor "demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances... justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative." 11 U.S.C. §707(b)(2)(B) specifies that:

> "(ii) In order to establish special circumstances, the debtor shall be required to itemize each additional expense or adjustment of income and to provide–
>
> (I) documentation for such expense or adjustment to income; and
>
> (II) a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable."

The Debtor has not asserted special circumstances.

Under these circumstances, the presumption arises and the case should be dismissed.

### B. Totality of the Circumstances

Pursuant to 11 U.S.C. § 707(b)(3), the Court may dismiss this case where the debtor's debts are primarily consumer in nature and the totality of the circumstances of the debtor's financial situation demonstrates abuse.

The Bankruptcy Code does not define "totality of the circumstances." However, pre-BAPCPA jurisprudence may be applied in evaluating the totality of the circumstances. See In re Pak, 343 B.R. at 243 (Bkrtcy.N.D.Cal.,2006). Under principles of statutory construction,

"[w]here Congress uses terms that have accumulated settled meaning under . . . common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms." Neder v. United States (1999) 527 U.S. 1, 21.

The Ninth Circuit, in interpreting and applying the phrase "totality of the circumstances" as indicia of "substantial abuse" under pre-BAPCPA section 707(b), identified several factors for courts to consider when weighing the totality of circumstances, including:

(1) Whether the debtor has a likelihood of sufficient future income to fund a Chapter 11, 12, or 13 plan which would pay a substantial portion of the unsecured claims;

(2) Whether the debtor's petition was filed as a consequence of illness, disability, unemployment, or some other calamity;

(3) Whether the schedules suggest the debtor obtained cash advancements and consumer goods on credit exceeding his or her ability to repay them;

(4) Whether the debtor's proposed family budget is excessive or extravagant;

(5) Whether the debtor's statement of income and expenses is misrepresentative of the debtor's financial condition; and

(6) Whether the debtor has engaged in eve-of-bankruptcy purchases.

Price v. United States Trustee, 353 F.3d 1135, 1139-1140 (9th Cir. 2004). The debtor's ability to pay his general unsecured debts as determined by his ability to fund a chapter 13 plan was the primary factor defining substantial abuse. Id. At 1140. Further, "a debtor's ability to pay his debts, standing alone, justif[ied] a section 707(b) dismissal." Id. quoting In re Kelly 841 F.2d 908, 913-915 (9th Cir. 1988).

As noted by the bankruptcy court in In re Pak:

The Court also finds instructive section 707(b)(3)'s use of the phrase "the totality of the circumstances." Prior to BAPCPA, courts considered whether to dismiss a consumer case for "substantial abuse" under section 707(b)(1) based on "the totality of the circumstances." (citation omitted) All courts considered the debtor's ability to pay to be an important factor in this context. It would be counterintuitive to construe the same phrase, as used in BAPCPA, to exclude a consideration of the debtor's ability to pay.

In re Pak, 343 B.R. 239, 243 (Bankr. N.D. Cal. 2006). See also In re Paret, 347 B.R. 12, at 15 (Bankr.D.Del. 2006) (the "shall" directive in § 707(b)(3) "explicitly mandates" consideration

of the totality of the circumstances to determine whether abuse exists if the § 707(b)(2) presumption does not arise or is rebutted); In re Pennington, 348 B.R. 647 (Bankr.D.Del. 2006) (under § 707(b)(3), courts must determine if a Chapter 7 filing is abusive by considering the totality of the circumstances of the debtor's financial situation).

Accordingly, it is appropriate to adopt the "substantial abuse" jurisprudence in the 9th Circuit to determine "abuse" under the BAPCPA.

As discussed above, the totality of the circumstances of their financial situation demonstrates abuse. Accordingly, the Court should dismiss this case under the provisions of 11 U.S.C. § 707(b)(3).

### IV. Conclusion

WHEREFORE, for all of the reasons set forth above, the case should be dismissed pursuant to section 707(b)(1) because the presumption of abuse arises under section 707(b)(2). In the alternative, the evidence shows that the Debtor has the ability to pay a substantial portion of her unsecured debt under section 707(b)(3) and the case should be dismissed.

Dated: December 29, 2011          Respectfully submitted,

                                       Mark L. Pope
                                       Assistant United States Trustee

                             By:       /s/ Robin Tubesing
                                       Robin Tubesing
                                       Attorneys for August B. Landis,
                                       Acting United States Trustee

                                       Direct phone: 559-487-5002 Ex. 224
                                       E-mail: robin.tubesing@usdoj.gov